# Appeal of the Lutheran Congregation of Union Church.

Where a testator in his will makes a devise to charitable uses and subsequently by a codicil to his will, made less than one calendar month before his death, makes a new devise to charitable uses, and revokes his former devise by a revocation self-supporting and independent of the latter devise, under the Act of April 26th, 1855, the devisee's next of kin or heir at law takes the devise as against the trustee of the former devise.

[Appeal of Lutheran Congregation.]

April 21st, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Montgomery county:* Of January Term, 1886, No. 433.

Appeal of the Lutheran Congregation of the Union Church of Whitemarsh, the Trinity Reformed Church of Norristown, and the St. Paul's German Lutheran Church of Norristown from the decree of said court confirming the Auditor's report making distribution of the fund in the hands of John Espenship, executor of the last will and testament of Lydia Benner, deceased.

Lydia Benner, a widow, died in the borough of Norristown, Montgomery county, Pa., on the 11th day of April, 1884, testate, and possessed of both real and personal property. She left surviving no issue, but the following heirs at law:

1. Jonas Erb, a brother; 2, Amos Erb, a brother; 3. Aaron Erb, a brother; 4, the children of a deceased brother, Simon Erb, to wit: George Erb, Levinah, wife of Henry H. Remy; the children of Mahlon Erb, deceased, to wit: Mahlon Erb, of full age. Levinah Erb, Milton Erb, George Erb, Charles Erb, Anna Maria Erb—all minors, who have Amanda B. Erb as their guardian.

The will, and codicils thereto, of said testatrix were duly probated on the 19th of April, 1884, and letters testamentary were granted to John Espenship, the executor named in the will.  The executor filed an account of his execution of the trust on the 5th of September, 1885, showing a balance of $10,959.36 in his hands for distribution among the legatees. E. B. Chain, Esq., was on the 10th of October, 1885, appointed Auditor to make distribution.

The testatrix's will is dated the 13th day of February, 1882.  After making sundry specific and pecuniary bequests, she disposes, on page 9 of her will, of her residuary estate as follows, to wit:

" Also the balance of my residuary estate after the foregoing provisions have been complied with, I order and direct to be divided into four equal shares; and one of said shares I give and bequeath absolutely to the lawful children of my deceased brother Simon Erb ; one share to my brother Aaron Erb, absolutely ; and the third share to my brother Jonas Erb, absolutely ; and the fourth share I order and direct to be equally distributed, share and share alike, among the Lutheran Congregation of the Union Church in Whitemarsh township aforesaid, the Trinity Reformed Church aforesaid, St. Paul's German Lutheran Church aforesaid, and the Cherry street Evangelical Church aforesaid, to be applied to the use and ben-

3 AMERMAN—3

efit of the Missionary Funds of each of the said churches respectively."

On the 26th of November, 1883, the testatrix made a codicil to her will, without any bearing, however, upon the present controversy; and on the 15th day of March, 1884, (within a calendar month of her decease) she added a second codicil in which, after bequeathing $500 in cash to her brother, Jonas Erb, she provides as follows, to wit:

"Item.      The division and bequest of the balance of my residuary estate into four equal shares as is provided on page 9 of my aforesaid last will and testament in the paragraph commencing 'Also, the balance of my residuary estate' and ending with each of said churches respectively, I hereby unqualifiedly revoke, and give and bequeath the whole balance of my residuary estate remaining after the provisions of my last will and testament preceding said paragraph and the codicils of my will have been complied with, share and share alike, that is, one fourth of said balance to each, to the Lutheran Congregation of the Union Church in Whitemarsh township aforesaid, the Trinity Reformed Church aforesaid, St. Paul's German Lutheran Church aforesaid, and the Cherry street Evangelical Church aforesaid, to be applied to the use and benefit of the Home Missions of each of said churches respectively."

The Auditor held that the words "unqualifiedly revoke" in the second codicil made the residuary bequest in the will inoperative, and that the bequest in the codicil itself was void under the Act of 1855, because the testatrix died within one calender month after she executed the second codicil; and accordingly distributed the whole of the testatrix's residuary estate to her heirs at law, which in effect was to take from the four churches one fourth of the residuum and to give the same to testatrix's brother Amos Erb, who was not included with her other brothers and their issue as her residuary legatees.

Exceptions were filed to the Auditor's report by the appellants, which were dismissed and the Auditor's report confirmed by the court, BOYER P. J. filing the following opinion:

The Auditor declared the codicil void as respects the bequests to the churches, under the Act of 26th April, 1855, and that the former bequests to them mentioned in the codicil as revoked were not revived by the testatrix within the time prescribed by the statute to give effect to the new bequests substituted by the codicil.

If the new bequests for religious and charitable uses substituted by the codicil were in all respects identical with the bequests for those purposes in the will, save in the amount

thereof, even the words of express revocation might not perhaps prevent the first bequests from taking effect, upon the principle that the manifest intention of the testatrix gathered from the four corners of the will is to govern.   In such case the reasoning of the exceptants might well be deemed irresistible; that notwithstanding the words "I hereby unqualifiedly revoke" made use of in the codicil, the manifest intention of the testatrix was simply to add to the amount to be received by the beneficiaries, and that her intention therefore could not have been to revoke the bequests already given by her will if the larger bequests of the codicil would become inoperative. I would prefer to base the construction upon this broad and reasonable ground, rather than upon a strict adherence to language susceptible of another interpretation, were the uses of these bequests really identical.   But in the will I find the bequests, although to the same churches as in the codicil, yet for uses not precisely identical.   The churches are but the trustees for certain uses in both; but in the will the bequests are to be applied "to the use and benefit of the Missionary funds of each of the said churches respectively" generally and in the codicil I find they are to be confined to "the use and benefit of the Home Missions of each of said churches respectively."   Under the first bequest the fund could have been applied to the use and benefit of foreign missions; but under the last they could not.   There is such a difference therefore in the uses of the legacies that it is impossible to say how much the change in this regard may have influenced the testatrix in her express revocation of the first form of the bequests; and therefore I cannot see any way to the conclusion so earnestly argued in behalf of the exceptants, that, although the bequests in the codicil to the churches are void, the bequests in the will for which they have been substituted can be sustained.

The exceptions are dismissed and the Auditor's report confirmed.

The appellants thereupon took this appeal assigning for error the decree of the court dismissing their exceptions and confirming the Auditor's report.

*Larzelere*, (*William F. Dannehower and Gibson* with him), for appellants.—The intention of the testator drawn from the words of the will must govern in its construction: Schott's Estate, 78 Pa. St., 4; Friedley *v.* Riddle, 3 Binn., 150.

Another established rule is, not to disturb the disposition of the will further than is absolutely necessary for the purpose of giving effect to the codicil: Jarman on Wills, 343; Bradley *v.* Gibbs, 2 Jones Eq., 13.

Another principle obtains that: "Even an express clause of absolute and present revocation of all former wills may be reduced to total or partial silence, either by showing that the clause was inserted by mistake, or that it is unreasonable to give unrestrained effect to the words:" Jarman on Wills 338.

A leading principle too familiar to need citation of authority is: That the courts will not construe a will so as to make a testator die intestate as to any part of his estate if it can be avoided.

The case at the bar tested by these familiar rules makes it obvious that both the learned Auditor and the learned Court fell into error in reaching the same conclusion, although upon different grounds. Each, however, overlooked the fact, that the particular intent which appeared upon the face of the rejected codicil was contrary to the manifest general intention of the testatrix. Hence the conclusion reached subverted the established principle, and the general manifest intention was caused to yield to the particular intent. This was error: Jones *v.* Murphy, 8 W. & S., 295; Arndt *v.* Arndt, 1 S. & R., 256; Graham *v.* Graham, 3 Clark, 77; Rudy *v.* Ulrich, 69 Pa. St., 183; *Ex parte* Ilchester, 7 Ves. Jr., 348; Hamilton's Estate, 74 Pa. St., 73; Carl's Appeal, 10 Out., 106.

The uses, to say the least, are partly identical. "Missionary funds" in the will certainly includes Home Missions. Hence to benefit Home Missions was never absent from her mind, and if the intention is so manifest in the will that the express words of revocation would fail to render the will inoperative, then the restriction and modification suggested in the codicil respecting the uses, would not be sufficient to annul the clause in the will and defeat the one use which was always uppermost in testatrix's mind.

*Frank S. Christian*, and *G. R. Fox & Son* for appellees.— Although a codicil and a will are to be read as one instrument generally, yet when the intent of testatrix is manifestly otherwise it will not be so read: Alsop's Appeal, 9 Barr, 374.

With the Master of the Rolls, Sir William GRANT, and with Judge SHARSWOOD citing his remark in Rudy *v.* Ulrich, 19 P. F. S., 183, we "cannot conceive how an instrument, inoperative in its direct purpose, can give effect to an intention of which I know nothing but by that purpose."

This case is entirely ruled by the case of Price *v.* Maxwell, 4 Casey, 23.

"But independent of the general rule, the Act of 1855 disposes of this question. It expressly declares that the 'dispositions' to 'charitable uses' shall 'go to the residuary lega-

tee, devisee, next of kin, or heirs according to law.' This clause excludes all idea of permitting the property to pass under any former will."

Appellants admit that the bequest under the will "for use and benefit of the Missionary fund" is not identical with the bequest in the codicil "for Home Missions." But, say they, "they are in part identical." It is respectfully submitted that it might have been to defeat the very part that is not identical, namely, the use of Foreign Missions, that caused the change in testator's bequest.

Testatrix performed two distinct acts : *First,* the revocation. *Second,* the bequest. The revocation must stand as the *intent* of testatrix. The bequest must fall by act and policy of the law.

The opinion of the court was filed May 10th, 1886.

PER CURIAM. There is no error in this decree. The revocation contained in the second codicil to the testatrix's will is self supporting. It is wholly independent of the devise following. The entire separation of the two testamentary acts is expressed in the clearest language. In saying as she does, "I hereby unqualifiedly revoke" the bequest previously made, she thereby wholly disconnects the revocation with all and every other bequest which she has made or may make.

Decree affirmed and appeal dismissed at the costs of the appellant.