# APPEAL OF LYDIA S. MENDINHALL.

FROM THE DECREE OF THE ORPHANS' COURT OF CHESTER
COUNTY.

Argued February 12, 1889—Decided February 25, 1889.

124     387
378C    ¹583

1. It is a rule laid down that when a testator revokes by a codicil a devise or bequest in his will, or in a previous codicil, expressly grounding such revocation on the assumption of a fact which turns out to be false, the revocation does not take effect, because considered conditional and dependent on a contingency which fails.

2. This rule may be conceded to be correct when applied to cases in which the falsity or error of the alleged fact rested not in the personal knowledge of the testator, but was assumed upon information derived from others, as in: Campbell v. French, 3 Ves. Jr. 321; Doe d. Evans v. Evans, 10 Ad. & E. 228.

3. But where a testator by a codicil revokes a legacy to his daughter, giving as a reason that he had made a gift of stock and a loan of money to her husband, the codicil will not be held inoperative on the ground that the transfer of the stock was a sale and not a gift and no loan was ever made, when in fact the transaction was peculiarly within the testator's knowledge and was in effect an advancement.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 254 January Term 1888 Sup. Ct.

On June 15, 1886, upon the petition of a party in interest setting forth that the account of Lydia S. Mendinhall and Anna B. Fogg, administrators c. t. a. of John Marshall, deceased, showing a balance in their hands of $94,770.05, had been confirmed, *Mr. William T. Barber* was appointed auditor to distribute the balance so shown.

The facts relating to the controversy, as found by the auditor from the evidence before him were as follows, to wit:

John Marshall, of Kennett Square, died on May 23, 1885, leaving a will dated July 16, 1877, which with the codicil hereafter copied, was duly admitted to probate.

The will itself, after making a comfortable provision for the testator's widow gave to each of his four daughters substan-

tially an equal amount of his estate. No bequest was made to a son, who previously had been advanced more than the amount of the legacy to each daughter. The provision made for his daughter Lydia, was as follows:

"I give and bequeath to my daughter, Lydia S. Mendinhall, the sum of twenty thousand dollars for her sole and separate use."

A share of the residue of the estate was also bequeathed to Mrs. Mendinhall.

In 1880–81, the testator was the owner of the Sheet-iron Rolling Mills, at Newport, Delaware, then lying idle. To put the mill into successful operation, and also with the purpose of establishing a business for Edward Mendinhall, the husband of his daughter Lydia, an offer was made to some business men and accepted, to organize a corporation with Edward Mendinhall as president and manager, and to sell the rolling mill property to the company for $40,000, $25,000 to be secured by bond and mortgage, and the balance to be paid in stock of the company, 150 shares at $100 per share.

On February 22, 1881, a written agreement, called exhibit A in this proceeding, was entered into between John Marshall and Edward Mendinhall, which recited the contemplated organization of the corporation, the sale and conveyance of the rolling mill to it on the terms stated, and then proceeded:

"Now this agreement witnesseth that said John Marshall for the consideration hereinafter mentioned, hereby agrees to assign, transfer and set over the whole of the said capital stock of fifteen thousand dollars ($15,000) when the same shall be issued to him as aforesaid, unto said Edward Mendinhall, to hold the same to his heirs, executors, administrators and assigns absolutely. In consideration whereof, the said Edward Mendinhall agrees to and with said John Marshall, upon the assignment of said stock to him, the said Edward Mendinhall as aforesaid, to execute and deliver to said John Marshall his bond for the sum of five thousand dollars ($5,000), to secure the payment of interest on that sum at the rate of six per cent, payable semi-annually to said John Marshall for and during the time of his natural life, and further agrees to pay to said John Marshall the dividends that may be declared on twenty-five hundred dollars ($2,500) of the capital stock of said com-

pany when and as declared, for the term of five years from date of transfer as aforesaid, it being hereby agreed that if either the said John Marshall, or Edward Mendinhall shall die within the said five years, that then and in such case, said dividends shall not thereafter be paid to said John Marshall, but shall belong thereafter to said Edward Mendinhall, his executors, administrators or assigns."

Indorsed on the foregoing agreement, when put in evidence, was the following receipt: "Received of Edward Mendinhall, his bond dated April 1, 1881, for $5,000, according to the written agreement. · [Signed] JOHN MARSHALL."

On March 2, 1881, the legislature of the state of Delaware passed an act incorporating the Marshall Iron Company, which organized under its charter on March 17th, and soon after started into successful operation. The rolling mill property was conveyed to the corporation on March 24, 1881, and on the same day the purchase money mortgage for $25,000 was executed and delivered.

On April 1, a bond was executed by Edward Mendinhall to John Marshall in the penal sum of $10,000, conditioned for the payment of $5,000, "on or before the expiration of one year from the date hereof, with lawful interest for the same from the date hereof, payable semi-annually." On this bond, called exhibit C in this proceeding, was indorsed, over the signature of John Marshall, receipts for semi-annual payments of interest, the last one being dated April 4, 1885. It was shown by parol evidence that this bond exhibit C, had been delivered and accepted by the parties in lieu of the one provided for in the agreement exhibit A.

On April 14, 1881, a certificate for 150 shares of the stock of the Marshall Iron Company was issued to John Marshall, and on the same day transferred upon the books by him to Edward Mendinhall, to whom a new certificate was issued and the older one canceled.

The codicil hereinbefore referred to as admitted to probate with the will of John Marshall was dated June 14, 1881, and was as follows:

"Whereas, since the execution of the foregoing will, I gave to my son-in-law, Edward Mendinhall, husband of my daughter, Lydia S. Mendinhall, one hundred and fifty shares of stock

in the Marshall Iron Company, Newport, Del., the par value of which is one hundred dollars per share, making fifteen thousand dollars; and have also loaned to him the sum of five thousand dollars, for which he has given me his bond. Now, in consequence thereof, I do annul and revoke the legacy of twenty thousand dollars given by me in my said will to my daughter, the said Lydia S. Mendinhall, and in lieu and stead thereof do give and bequeath to her, my said daughter, Lydia S. Mendinhall, her executors and administrators, absolutely, the said bond for five thousand dollars, given to me by her said husband as aforesaid, with all interest that may be due thereon at the time of my death. And I do hereby ratify and confirm my said will in all other respects."

The business of the Marshall Iron Company turned out to be prosperous. The stock sold at par and dividends had been declared thereon from time to time. Of the mortgage, $13,000 had been paid, and the company had a surplus of about $13,000 at the date of the hearing.

Lydia S. Mendinhall claimed before the auditor, that inasmuch as the testator had stated upon the face of the codicil, his reasons for the revocation of the legacy to her of twenty thousand dollars and had expressly grounded his revocation upon the assumption of certain facts therein set forth, the said revocation was not an absolute but a conditional one, dependent upon the truth or falsity of the facts so assumed; that the assumptions of fact which are stated in the codicil as forming the basis of the revocation were untrue, to wit: He had not given to Edward Mendinhall one hundred and fifty shares of stock in the Marshall Iron Company; neither had he loaned to Edward Mendinhall the sum of five thousand dollars, for which Edward Mendinhall had given him his bond: that she was prepared to prove the falsity of the facts stated in the codicil, and was entitled in law to the opportunity of proving them by evidence dehors the will; that the revocation in said codicil being founded upon a mistake of fact was inoperative, and that the legacy given to her, in the body of the will, stands, and must be awarded to her in the distribution.

On the other hand, the remaining legatees named in the testator's will contended that the revocation by the codicil was

absolute, and operative, and that there was no question of fact affecting this legacy which could be inquired into by the auditor in this proceeding.

The auditor, after an elaborate study of the following authorities: 1 Jarman on Wills, 5th Amer. ed. by R. & T., 357; 1 Powell on Devises, 3d ed. by Jarman, 523; Swinburne on Wills, 7th ed., 894; 2 Roberts on Wills, 3d ed., 40; 1 Williams on Executors, 7th ed., 208; Campbell v. French, 3 Ves. Jr. 321; Doe d. Evans v. Evans, 10 Ad. & E. (37 E. C. L.) 228; Dunham v. Averill, 45 Conn. 61 (29 Amer. R. 642); Goods of Richard Monsby, 1 Hagg. 378; Thomas v. Howell, L. R. 18 Eq. 198; Tomlin v. Underhay, L. R. 22 Ch. D. 495; Mordicai v. Boylan, 6 Jones Eq. 90; Attorney-General v. Ward, 3 Ves. Jr. 327; Parker v. Nickson, 1 DeGex J. & S. 177; Attorney-General v. Lloyd, 3 Atk. 551; s. c. 1 Ves. Sr., 32; Hayes v. Hayes, 21 N. J. 265; 1 Redfield on Wills, 359, arrived at the following general conclusions, to wit:

"1. That where the reasons for the revocation are set out upon the face of the codicil, and the codicil can be read as conditional upon the truth of the reasons assigned, such revocation is inoperative if the reasons assigned are untrue.

"2. That where the truth or falsity of the assumed facts upon which the revocation is expressed to be based, appear not to have been within the personal knowledge of the testator, the revocation is conditional upon the truth of those facts, and becomes inoperative upon the simple showing of their falsity.

"3. That where the truth or falsity of the assumed facts must have been, at or prior to the execution of the codicil, within the knowledge of the testator, the revocation will not be read as conditional upon the truth of the facts assumed, unless the claimant shall satisfy the mind of the chancellor or court, that the testator was laboring under some mistake in his conception of the facts at the time the codicil was executed.

"4. That in either of the preceding cases, the court will permit the fullest inquiry dehors the will, to be entered into by the claimant in the determination of his rights under the will and codicil, in so far as respects the mistake of the testator as to the facts assumed."

The auditor then proceeded:

Auditor's Report.

"Reading the codicil to the will of John Marshall, with a view to the application of these principles, the auditor is of opinion that this is one of the cases where the truth or falsity of the assumed facts therein contained must have been at some time prior to the execution of the codicil, personally known to the testator, for the reason that he was a party thereto; and that therefore it is incumbent upon the claimant, Lydia S. Mendinhall, to satisfy the court that the testator at the time of the execution of the codicil, was laboring under some misapprehension in his conception of the facts as they then existed. The auditor is further of opinion, and so holds, that she is entitled to show such misapprehension by any competent evidence, documentary or parol, dehors the will, and that if she is successful in this effort, the revocation will be read as conditional and will be pronounced inoperative; but if, on the other hand, she fails to satisfy the court of the mistake, the revocation will take effect, and she will not be entitled to the whole or any part of the legacy of $20,000 bequeathed to her in the body of the testator's will, but only to her share of his residuary estate."

The auditor then proceeded to an examination of the testimony, parol and documentary, and after a discussion of the same found the facts substantially as stated in the introduction of this report, and continued:

From the foregoing documentary and parol proof, the auditor is asked to find that the reasons given by the testator for the revocation of the contestant's legacy, to wit, the "gift" of the stock, and the "loan" of the money are false; that the testator, in so stating these reasons, was laboring under a mistake; and that the revocation is conditional and inoperative. Whether or not the evidence will safely bear such a construction, is the matter presented for inquiry and determination.

Let us, in the first place, consider the question raised by the transfer of the stock. Reading the agreement exhibit A between the lines, in connection with the fact which is in evidence, that the testator was exceedingly desirous of disposing of the mill property and had repeatedly offered to sell it for thirty-five thousand dollars, we cannot escape the conclusion that as between the testator and Edward Mendinhall, the consideration which the former was to receive for the mill, con-

sisted solely of the mortgage for twenty-five thousand dollars, the interest on the bond of five thousand dollars during life, and the dividends on twenty-five shares of stock for a period of five years; that it was the intention of the parties to the agreement, from the outset, that Edward Mendinhall should have the stock, and that the issuance of the certificate to the testator was but a device whereby that intention could more readily be effectuated. The transaction therefore, in which Edward Mendinhall acquired ownership of one hundred and fifty shares of the capital stock of the Marshall Iron Company was not in the legal acceptation of the term a "gift." A gift is defined to be "the act by which the owner of a thing voluntarily transfers the title and possession of the same, from himself to another person who accepts it without any consideration." The testator, however, never became under the agreement the actual owner of the stock; he was merely, so to speak, the conduit through which the stock was to be conveyed to Edward Mendinhall. Edward Mendinhall also paid a consideration for the transfer of the stock as specified in the agreement, a consideration which was in part payment for conveyance by John Marshall of the mill property to the Marshall Iron Company. The two essential requisites of a gift are therefore lacking, to wit, first, that the party transferring the title shall be owner, and secondly that the transfer shall be without consideration.

Moreover, that Edward Mendinhall fulfilled his part of the contract, at least so far as respects the payment of dividends on twenty-five shares of stock of the Marshall Iron Company, during the lifetime of the testator, is shown by the receipts of John Marshall which were in evidence, and is conceded by every one. The statement in the codicil, "Whereas, I gave to Edward Mendinhall—one hundred and fifty shares of stock" etc., is therefore untrue if we are required to construe the word "gave" in its legal and technical signification. In the opinion of the auditor, however, we must construe the word, "gave" with reference to the intention of the testator and the thought which he had in his mind, appearing by the will and by extrinsic evidence. In Wright's App., 89 Pa. 67, the words "loaned" and "advanced," in the testator's will, were held to be used interchangeably. Mr. Justice WOODWARD in

delivering the opinion said: " They are to be construed in view of the facts that have been either admitted or ascertained. It has often happened that the stringent application of even a strictly technical word has worked grievously unjust results. All mere technical rules of construction must give way to the plainly expressed intention of a testator: SHARSWOOD, J., in Reck's App., 78 Pa. 432; and, when in aid of a written instrument, its intention can be gathered from undoubted proofs, the equity of parties claiming under it are not to be overthrown by a rigid adherence to one alternative meaning of an equivocal technical word."

From a study of John Marshall's will, it is very clear that the controlling idea and intention with him was to make an equal provision for each of his children. To his daughters Mary H. Brosius, Lydia S. Mendinhall, and Anna B. Fogg, he bequeathed to each twenty thousand dollars. To his daughter Elizabeth M. Hannum, he gave the income of eighteen thousand dollars for life, and the use for life of a house in Kennett Square worth about four thousand dollars, and at her death, to her children, thus making her share about equal to the shares of his other daughters. Then he states that " in justice to his daughters " he does not give a similar legacy to his son Calvin P. Marshall because he had paid debts of Calvin recently, to the amount of about twenty-two thousand dollars. He then divides the residue of his estate into five equal parts, and gives to each of his children one of these parts. Afterwards he entered into a written agreement with Edward Mendinhall, husband of his daughter, Lydia S. Mendinhall, whereby, through the sale of the rolling mill, his said son-in-law became the owner of stock in the Marshall Iron Company, worth, in the opinion of the testator, as well as in point of fact, the sum of fifteen thousand dollars, the ownership of which the testator considered to be a benefit to his daughter and her family equal to its par value. The legacies to his other children could not take effect until his death. At the time of the execution of the codicil, the stock had been transferred to Edward Mendinhall, the mill was in active operation and the prospect was that the business would be profitable. In justice to his other children, the payment of whose shares in his estate was deferred until the testator's death, he must

have regarded the consideration paid for the stock, as mentioned in the agreement, in the light of interest upon the amount of principal which it represented. The transfer of the stock was, therefore, from the testator's standpoint, substantially a "gift."

That it was so regarded by him can hardly admit of a question. He was a party to the transaction, and was necessarily familiar with its details. He was a man of intelligence and business capacity, and at the time of his death, was president of the National Bank of Kennett Square, a flourishing institution located in the borough in which he lived. It is not to be presumed that within two months after the transfer of the stock, he became by reason of advanced age or forgetfulness, mistaken as to the facts, and believed that he had actually made a present to his son-in-law, of fifteen thousand dollars in the stock of the Marshall Iron Company. No mistake is shown. On the contrary the evidence is very convincing that there was no mistake. . . . .

In the light of all the evidence as presented before him, the auditor holds that as a matter of construction, the revocation in the codicil of June 14, 1881, is not conditional, but operative, and that the contestant, Lydia S. Mendinhall, is only entitled in the distribution of the fund now in the hands of the administrators to her share of the residue.

To the foregoing report, Mrs. Mendinhall filed various exceptions alleging in substance that the auditor erred in his conclusion that the legacy bequeathed to the exceptant by the testator's will was revoked by the codicil dated June 14, 1881, and that the exceptant was entitled in the distribution to a share in the residue only.

Said exceptions having been argued, the court, FUTHEY, P. J., dismissed them and confirmed the auditor's report. Thereupon the exceptant took this appeal, and assigned, specifically, the dismissal of the exceptions and the confirmation of the report as error.

*Mr. Thomas W. Pierce* and *Mr. Benjamin Nields*, for the appellant:

1. Where a testator revokes by a codicil, a devise or be-

quest in his will, or in a previous codicil, expressly grounding such revocation on the assumption of a fact which turns out to be false, the revocation does not take effect, being, it is considered, conditional, and dependent on a condition which fails : Jarman on Wills, 183 ; 1 Williams on Executors, 208 ; Campbell v. French, 3 Ves. Jr. 321 ; Attorney-General v. Ward, 3 Ves. Jr. 327 ; Doe d. Evans v. Evans, 10 Ad. & E. (37 E. C. L.) 228 ; Thomas v. Howell, L. R. 18 Eq. 198 ; Tomlin v. Underhay, L. R. 22 Ch. D. 495 ; Mordicai v. Boylan, 6 Jones Eq. 90 ; Dunham v. Averill, 45 Conn. 61 ; Gifford v. Dyer, 2 R. I. 99 (57 Amer. Dec. 708) ; Clifton v. Lady Tombe, Amb. 519 ; Goods of Monsby, 1 Hagg. 378 ; Hayes v. Hayes, 21 N. J. 265.

2. The general rule, which is laid down in the books, and on which alone courts can with safety proceed in the decision of questions of this kind, is to collect the testator's intention from the words he has used in his will and not from conjecture : and it is not the actual intention of the testator, but the legal intention, which is the rule by which a will is to be construed: Hay v. Earl of Coventry, 3 Term R. 85 ; Jackson v. Luquere, 5 Cow. 221 ; O'Hara on Construction of Wills, 30 ; Martindale v. Warner, 15 Pa. 471. The question is, not what the testator meant, but what is the meaning of his words : Hancock's App., 112 Pa. 532 ; Walton v. Walton, 7 Johns. Ch. 257 ; Walls v. Stewart, 16 Pa. 275.

*Mr. R. S. Waddell* and *Mr. R. T. Cornwell,* for the appellees :
Even if the transactions were not technically a " gift " and a " loan," as the testator in his brief description in the codicil characterized them, still it was abundantly shown and found by the auditor that the testator was himself a party to and personally conversant with all the details of them, and none knew better their true character. If, then, under these circumstances he intended to revoke the legacy, the codicil is operative: Campbell v. French, 3 Ves. Jr. 321 ; Doe d. Evans v. Evans, 10 Ad. & E. (37 E. C. L.) 228 ; Dunham v. Averill, 45 Conn. 61 ; Goods of Monsby, 1 Hagg. 378 ; Thomas v. Howell, L. R. 18 Eq. 198 ; Tomlin v. Underhay, L. R. 22 Ch. D. 495 ; Attorney-General v. Ward, 3 Ves. Jr. 327 ; Attorney-General v. Lloyd, 1 Ves. Sr. 32 ; Parker v. Nickson,

66 Eng. Ch. 177; Hayes v. Hayes, 21 N. J. 265; 1 Williams on Executors, 7th ed., 208; Theobald on Wills, 424; 1 Jarman on Wills, 5th Am. ed., 357; 1 Powell on Devises, 3d ed., 523; 1 Redfield on Wills, 359.

OPINION, MR. CHIEF JUSTICE PAXSON:

The learned auditor and court below held that the legacy to the appellant of $20,000 was revoked by the codicil to the testator's will, and that she is only entitled to her share of the residue of the estate. The contention of the appellant is that this ruling is erroneous for the reason that the testator based his revocation of the legacy on the ground that the facts alleged by him in the codicil were true; that as the reason for the revocation has failed, the revocation itself falls, and the appellant is entitled to be paid the $20,000. The rule as laid down in the text books appears to be this: "And here it may be observed, that, when a testator by a codicil revokes a devise or bequest in his will, or in a previous codicil, expressly grounding such revocation on the assumption of a fact which turns out to be false, the revocation does not take effect, being, it is considered, conditional and dependent on a contingency which fails:" 1 Jarman on Wills, 357; Powell on Devises, vol. 1, 523; 2 Roberts on Wills, 210; 1 Williams on Executors, 208. The two cases especially relied upon by the text writers in support of this proposition are Campbell v. French, 3 Ves. 321, and Doe on the demise Elizabeth Evans v. Henry Evans, 10 Ad. & E. 228. The learned auditor has collected a large number of cases, mostly English, upon this subject, which in the main sustain the text-writers.

The principle referred to may be conceded to be correct when applied to cases in which the falsity or error of the alleged fact rested not in the personal knowledge of the testator, but was assumed upon information derived from others; as in the case of Campbell v. French, supra, where by his will the testator gave legacies to A. and B., describing them as grandchildren of C. and then residing in America. By a codicil he revoked these legacies, giving as a reason that the legatees were dead. That fact not being true, and being necessarily derived from information of other persons, the legatees were held to be entitled to the legacy, notwithstanding the revocation. In the

case in hand, the reason given by John Marshall, the testator, for the revocation of the legacy of $20,000 to his daughter, the appellant, was, that he had, since the execution of his will, given to his son-in-law, Edward Mendinhall, the husband of the appellant, one hundred and fifty shares of stock in the Marshall Iron Company, the par value of which was one hundred dollars per share, and had also loaned to him the sum of five thousand dollars. The appellant contends that this statement was untrue; that the transfer of the stock to his son-in-law was a sale, not a gift, and that he had never loaned him the five thousand dollars. The facts were that the testator transferred this stock to Mendinhall upon an agreement with the latter that he (Mendinhall) should " execute and deliver to the said John Marshall his bond for the sum of $5,000, to secure the payment of interest on that sum at the rate of six per cent, payable semi-annually to the said John Marshall for and during the term of his natural life, and further agrees to pay to said John Marshall the dividends that may be declared on $2,500 of the capital stock of said company when and as declared for the term of five years from date of transfer as aforesaid, it being hereby agreed that if either the said John Marshall or Edward Mendinhall shall die within said five years, that then and in said case said dividends shall not thereafter be paid to said John Marshall, but shall belong thenceforth to said Edward Mendinhall, his executors, administrators or assigns."

The object of this arrangement is apparent. The testator was conveying to his son-in-law $15,000 of stock which it was believed would be valuable, and which in point of fact proved to be worth more than its par value, the dividends thereon being from ten to fifteen per cent. It was an advancement during the lifetime of the testator, over and above what his other children received at that time, and the provision for the bond of five thousand dollars and for the dividends upon $2,500 of the stock was doubtless intended to produce equality between his children, taking into consideration the testator's expectancy of life. Be that as it may, the testator regarded it as an advancement; in point of fact it practically was so; the testator had the right to so treat it; the facts were peculiarly within his own knowledge, and we cannot deny him the

right to do what he pleased with his own property. Were we to reverse this case and award the $20,000 legacy to the appellant, we would cause gross inequality in this estate, the appellant would receive her full share, and her husband would get in addition $15,000 of valuable stock, for which he has paid nothing beyond a reasonable consideration for the advancement in the lifetime of the testator.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

