## McClure's Estate.

Argued December 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*B. H. Ludlow,* of *Powell & Ludlow,* for appellant.— The doctrine of dependent relative revocation applies: Melville's Est., 245 Pa. 318.

*Walter Lee Sheppard,* of *Foulkrod, Sheppard, Porter & Alexander,* with him *Philip Price,* for appellees.—A will which makes a complete disposition of all the property of testator operates as a revocation of all wills previously executed: Teacle's Est., 153 Pa. 219.

The doctrine of dependent realtive revocation can apply only in the case of an ineffectual attempt to revoke some designated provision in a will by codicil, the will in other respects to stand: Sigel's Est. (No. 1), 213 Pa. 14; Wright's Est., 68 Pa. Superior Ct. 177.

The court will not imply a conditional revocation: Price v. Maxwell, 28 Pa. 23; Hoffner's Est., 161 Pa. 331; Anderson's Est., 243 Pa. 34; Emernecker's Est., 218 Pa. 369.

*Philip Price* and *Barnes, Biddle & Myers,* for appellee, Lulu Robertson Hertzler Sadler.

OPINION BY MR. JUSTICE KEPHART, January 3, 1933:

Decedent died May 11, 1930. Two papers, each testamentary, were found among her effects. The first will was dated June 20, 1924. It was formally drawn and properly attested. After provision for funeral and other expenses, a specific bequest was made of six one-thousand dollar bonds to the League of Women Voters; the residue of the estate was given testatrix's niece, Louise Hertzler, who was also named as executrix. Later the name Louise Hertzler was obliterated, working a revocation of her legacy as well as her appointment as executrix.

The second paper was in the handwriting of the decedent; it was informally drawn; dated September 1, 1924; headed "My Will;" $319 was allotted to funeral and crematory expenses, $250 for the perpetual care of the cemetery lot, then this clause followed: "Everything else belonging to me to be sold and the money obtained added to any money I leave and the amount which should exceed $11,000.00 given to the Protestant Home

for Children under ten years of age." It was signed by the testatrix, but not witnessed.

Both wills were admitted to probate by the register, so that the court could have before it on appeal the several instruments, fairly open to judicial adaptation to determine the extent to which one instrument revoked the other. The questions thus presented on both wills were left for determination on final distribution of the account, which showed a balance of approximately $19,000. The auditing judge held that the second will did not revoke the gift to the League of Women Voters, and awarded the specific bonds to them. On appeal, the court in banc reversed the auditing judge, holding that there was a complete revocation of the first will. This appeal is by the League of Women Voters.

The second instrument contained no express clause of revocation, no subscribing witnesses and, as originally written, made no provision for heirs. The bequest of the residuary estate to the Protestant Home for Children was invalid under section 6 of the Wills Act, June 7, 1917, P. L. 403, which provides: "No estate, real or personal, shall be bequeathed or devised to......charitable uses, except the same be done by will attested by two credible......witnesses......and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law." See Anderson's Est., 243 Pa. 34.

It is urged by appellant that inasmuch as the dispositive part of the second will, which gave the residue of the estate, failed, then, as the revocation implied by this gift was conditional and dependent upon the efficacy of this new disposition, the revocation would also fall, leaving the prior gift to stand; that the purpose to revoke by the new disposition was subservient to the effective making of such disposition, and, if that was not successful, the prior bequest remained in force. To sustain this doctrine of dependent relative revocation, as

applied to this will, Melville's Est., 245 Pa. 318, is relied on. In that case there was an express revocation by codicil of a material provision of the will, and there may be a distinction between wills with and without an express revocation. Each is to be considered with regard to the inherent or related characteristics of the two opposed instruments. What the court was there considering (Mellville's Estate) was a will and codicil, and not two antagonistic wills, where a presumption of revocation may be made from such circumstance: Sigel's Est., 213 Pa. 14, 17.

The determination of the question now pressed by appellant was not necessary to the decision of Melville's Estate, and the doctrine there stated must be applied only to the facts coming under that case, to-wit, revocation of a designated provision in a will by a subsequent codicil. See Wright's Est., 68 Pa. Superior Ct. 177; Mifflin's Est., 49 Pa. Superior Ct. 605.

The doctrine of dependent relative revocation, an inferred intention of the testator, to be applied under given circumstances, has not as yet been accepted in its arbitrary form in this State. For its satisfactory solution there is nothing to lead the judicial mind with anything approaching logical certainty to the testatrix's real intent, when the provision of the second will fails either from internal or external causes: Price v. Maxwell, 28 Pa. 23, 39. Especially is this so when there is a residuary bequest disposing of the entire estate.

There is a further objection to the doctrine of dependent relative revocation as applied to this case. It would mean this court felt that testatrix intended the prior will to remain effective if the second failed. It is obvious testatrix never contemplated such a contingency, and we are asked to infer an intent never possessed by the decedent. While intention is paramount in the construction of testamentary documents, it by no means follows that the courts should create an intention, then

ascribe it to a decedent, relative to a disposition of property which he never considered.

Appellant claims that the bequest is a substitutionary or alternate one, and if it failed the former succeeded. There is nothing in the second will to indicate such intent. The two dispositions in question do not lie in the same category. The legacy to the appellant was a specific gift of $6,000 in bonds. The residue was given to the niece. No such gift appears in the second will. The entire residue was given to the Home for Protestant Children, and even in case of substitutionary or alternate bequests, it has been held by English authorities that if the testator merely indicates that he is making a new disposition in substitution of the former disposition, the failure of the substitutionary bequest will, nevertheless, effect a revocation of the former bequest. See Tupper v. Tupper, 1 Kay & J. 665.

The argument is further made that, as there is defective execution of the second will, there is an infirmity in the instrument. The acts require a will to be signed at the end by the testator, which is done. It does not require witnesses. The bequest for funeral expenses and perpetual care of the cemetery lot are valid. The will actually disposes of property and if it had contained an express revocation no one would question its effectiveness. The statute interdicts charitable bequests unless the will is executed in a given manner, but a failure to comply with the act in that respect will not militate against the instrument as a will where it is a dispositive document.

Appellee argues that there was a clear intention evidenced in the two wills to exclude the heirs from any participation in the property, that unless the league gets the money testatrix's intention will be frustrated, and it asks, "Can it be said that she intended intestacy?" We might say that the statute made a sufficient disposition of the residue, and testatrix here knew it, which

would possibly be an answer to appellant's contention, but we need not surmise on what the testatrix thought, as both the instruments express it. She gave the residue of the estate to her niece, then she immediately,—at least that is the presumption,—struck it out, and thereby created an intestacy as to the remainder of her estate, the residue going to her heirs or the next of kin. In the second will, the bequest to the home having failed, there was an intestacy just as there was in the first will, the difference being only in amount.

The second will was an effort to dispose of all testator's property. A will which makes a complete disposition of all the property of the testator is clearly incompatible with the existence of any former will, and it must operate as a revocation of all wills previously executed (1 Jarman on Wills, page 333), or, as stated in Teacle's Est., 153 Pa. 219, "must operate as a revocation without express words to that effect."

The later will, sustained by the court below, disposes of the entire estate and is inconsistent with the earlier will. The provisions of the two wills cannot be harmonized. There is no reference in the later will to the first will, nothing inherent in the second will connects it with, or in any way refers to, or leads the mind to, the earlier will. They are two separate and distinct papers, both complete in themselves, without any relation to each other, with no inherent characteristics to compel a connection. A will may adopt an existing paper by reference thereto but to do so it must so identify the instrument as not to admit of a contrary conclusion: Seiter's Est., 265 Pa. 202, 206. Testatrix, in her second will, after providing for funeral expenses and the care of her lot, directs all her property to be reduced to cash, and gives it all to the Home for Protestant Children. That is what she intended to do, and by so doing she completely annulled her pre-existing intention to give six bonds to the League of Women Voters. She disposes of

"everything else belonging to her." There could be no clearer expression of intent than this provision. The mere fact that the will did not carry with it a sufficient execution to make the gift complete does not destroy the thought in the testatrix's mind when she wrote that paragraph, nor can we say that her intention was not complete because the will lacked two signatures. The wills cannot be read as though this disposition was omitted, nor do we express an opinion as to what would happen if the clause had been omitted. The intent appears from what testatrix expressed in her own writing, and the Wills Act recognizes the gift, though declaring it cannot be executed: "all dispositions of property contrary thereto shall be void and go to the residuary legatee or devisee." That is an express direction as to what is to be done with the property, and a recognition of the abortive attempt of testatrix to give something, by expressing her intention to give. It evidenced a complete intention to revoke the prior will. The case of Anderson's Est., supra, is apposite. We there said: "The [gift to] charity being void by reason of the codicil not having been executed in accordance with the Act of 1855, the fund went to the testator's next of kin. The act provides that the invalid bequest shall 'go to the residuary legatee or devisee, next of kin, or heirs, according to law.' Here there is no residuary clause disposing of the fund bequeathed to charity, and hence it goes to the next of kin, the persons entitled under the intestate laws." The court below was clearly right in sustaining the second will.

Decree affirmed at appellant's cost.