Taubel Will.

Argued November 23, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Donald W. Hedges*, with him *Desmond J. McTighe, Thomas F. Wilson*, and *Mancill, Cooney, Semans & Hedges*, for appellant.

20

*J. Brooke Aker*, with him *Harold J. Budd, M. Paul Smith*, and *Budd & Bertas*, and *Smith, Cahall & Aker*, for appellees.

OPINION BY MR. JUSTICE McBRIDE, December 30, 1959:

The decedent, Lillian E. Taubel, died November 1, 1958, a resident of Montgomery County, Pennsylvania. Following her death various testamentary documents, written at different dates, were lodged, by request, with the Register of Wills of Montgomery County. Only the writing bearing the latest date, March 26, 1953, was offered for probate. There was also lodged with the Register a second document which is a revocatory writing in the margin of a copy of this March 26, 1953 instrument. The Register certified the matter to the Orphans' Court under Section 207 of the Register of Wills Act of 1951.[1]

The court below, after a full hearing, held that the will of March 26, 1953, which was offered for probate, was effectively revoked and directed the Register to refuse probate. This appeal followed.[2]

At the hearing the documentary evidence included a writing offered by John Tait, the Executor named therein,[3] which is the original will in question dated March 26, 1953 signed by decedent and properly wit-

[1] The Register of Wills Act of 1951, P.L. 638, §207, 20 P.S. §1840.207, provides: "Whenever a caveat shall be filed or a dispute shall arise before the register concerning the probate of a will, . . . he may certify . . . the entire record to the court, which shall proceed to a determination of the issue in dispute. . . ."

[2] On appeal from a decree of the Orphans' Court admitting a will to probate or refusing to do so the question before this Court is whether there is evidence to support the decree. *Schwartz's Estate*, 340 Pa. 170, 16 A. 2d 374.

[3] Proponents are the executor and substitute exercutor named in this will. Both under the will and in the event of intestacy decedent's daughter takes her estate.

nessed. There is no contest relating to the execution of this instrument or that it has been duly proved for probate by two competent witnesses to decedent's signature. Also introduced into evidence was a carbon copy of an independently made typewritten copy of the will of March 26, 1953. This, however, is not a carbon copy created simultaneously with such will. It is unsigned and not conformed and was prepared on a different typewriter; but is the same in content as the signed original, with one irrelevant exception.[4] Along the left margin of the first page of this document the following notation, admittedly in the handwriting of decedent and signed by her at the end, is found:

"The original of this will (4 pages) was destroyed by me of my own free will—in the kitchen of my home at 334 Winding Way—Merion—Pa. in the presents (sic) of Colbert McClain, Atty., Robert Lawson, and Arnay Deegan—in the Fall of 1954,[5] therefore this will is null and void; copy is being kept by me for my information only /s/Lillian E. Taubel, 9/16/55." This copy also contained various miscellaneous notations in the handwriting of decedent, including the words "signed Thurs. nite 3/26/53." The sole issue is whether this marginal writing constitutes an effective revocation of the signed original within the meaning of §5(2) of the Wills Act of 1947, P.L. 89, §5(2), 20 P.S. §180.5(2). The Act provides: "No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: . . . (2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, . . ." It is, of course, settled law that an "other writing" need

---

[4] The word "last" in the phrase "my last will" is left out of the second line on page one.

[5] Testimony produced at the hearing showed this to be a mistake, the actual time being the Fall of 1955.

not be in any particular form or any specific kind of instrument; it can be any sort of writing so long as it indicates the intent to revoke and hence sufficiently complies with the Act. *Kehr Will,* 373 Pa. 473, 95 A. 2d 647; *Gray Will,* 365 Pa. 411, 76 A. 2d 169.

The requirements for revocation are that the instrument be in writing; state its purpose to be that of revocation; identify what is to be revoked; be signed at the end with the intent to revoke; and that the signature be proved by two competent witnesses. All of these elements have been clearly established in this case. It is conceded that this revocation is in writing; signed at the end; and that the signature is that of the decedent. The revocatory inscription itself states "therefore this will is null and void." This plainly states its purpose to be the revocation of some instrument. The opening line of this notation refers to the fact "The original of this will (4 pages) was destroyed by me of my own free will." An examination of the document on which this inscription was written and to which it obviously refers shows it to be a copy of the March 26, 1953 will with one irrelevant exception, as hereinbefore noted. It is thus clear that the instrument intended to be revoked is the will of March 26, 1953. The identity of this instrument and the fact that the revocatory writing was executed with the intent to revoke is also confirmed by oral testimony. This revocatory inscription was executed by the decedent in the presense of three disinterested witnesses, two of whom testified at length at the hearing concerning its execution. The third witness was unavailable but all parties agreed that he would corroborate the testimony of the other two witnesses. This testimony was to the effect that decedent wished to revoke her will of March 26, 1953 and thus, in their presence, destroyed what she believed to be the original but

which was later shown to be a copy,[6] and at the same time made this revocatory inscription on another copy which she wished to retain for her own information.

This interpretation of the marginal notation is further buttressed by declarations of the decedent subsequent to the date on which the revocation was executed. Both her daughter and her maid testified that in 1957 and 1958 they were told by decedent that she didn't have a will. This evidence, in conjunction with the testimony of the witnesses present at the execution of the revocatory writing, is completely in accord with the terms of the writing itself and supports the conclusion that the will of March 26, 1953 was properly revoked by this writing in conformity with the requirements of the Wills Act, supra.

The decree of the court below is affirmed. Costs on appellant.

---

[6] This copy which had been torn lengthwise by decedent was later pasted together and retained by her and was introduced at the hearing.