## Holt Estate.

Argued September 29, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Carmen V. Marinaro*, for appellant.

*Norman D. Jaffe*, with him *Luther C. Braham, Darrell L. Gregg, Richard B. Kirkpatrick*, and *Galbreath, Braham, Gregg, Kirkpatrick & Jaffe*, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 14, 1961:

This is an appeal from the decree of the Orphans' Court of Butler County which set aside the probate of the will of J. Leo Holt, declared that decedent had died intestate and directed the Register of Wills to issue Letters of Administration. The matter was heard before the Court below on a petition for a declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923.* From this decree decedent's widow, Phyllis Dittmer Holt, has taken this appeal.

Decedent died on March 5, 1958, survived by his widow and two minor children, Sharon Lee Holt and Georgia Lynne Holt. There was found among his possessions an instrument dated January 7, 1944, which was offered for probate as his last will and testament, together with a codicil thereto dated June 17, 1950, which was also offered for probate. Testator was married to his present widow prior to 1944, but his two children were born subsequent to 1944. In the event of intestacy decedent's widow and children would of course share his estate.

The instrument of January 7, 1944, (1) directed the payment of decedent's debts, inheritance tax and expenses of administration and (2) devised the residue of his estate to his wife. The codicil of June 17, 1950, consisted of two clauses; the first republished his 1944 will, and the second clause appointed the Butler Savings & Trust Company as guardian for his minor children.

Decedent had written across the bottom of the instrument dated January 7, 1944, the following:

"Sept. 8-1955

"I hereby render this will void and intend to make one revised.

"J. Leo Holt"

---

* P. L. 840, as amended, 12 PS §831 et seq.

Holt never made another will. The question which we must decide is whether those words effectively revoked Holt's will or whether the principle of dependent relative revocation applies.

The Wills Act of April 24, 1947,* pertinently provides as follows:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: . . .

"(2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills, . . . ."

In *Taubel Will*, 398 Pa. 19, 156 A. 2d 858, testatrix wrote on the margin of an *unsigned*, unconformed, typewritten *copy* of her will—which copy was made subsequently and on a different typewriter but was the same in content (with one unimportant exception) as the signed original—a notation including the words "this will is null and void" and signed it at the end. This Court held that this instrument was an effective revocation of her signed original will and said: ". . . It is, of course, settled law that an 'other writing' need not be in any particular form or any specific kind of instrument; it can be any sort of writing so long as it indicates the intent to revoke and hence sufficiently complies with the Act. Kehr Will, 373 Pa. 473, 95 A. 2d 647; Gray Will, 365 Pa. 411, 76 A. 2d 169.

"The requirements for revocation are that the instrument be in writing; state its purpose to be that of revocation; identify what is to be revoked; be signed at the end with the intent to revoke; and that the signature be proved by two competent witnesses. All of these elements have been clearly established in this case. It is conceded that this revocation is in writing; signed at the end; and that the signature is that of the decedent. The revocatory inscription itself states

---

* P. L. 89, §5, 20 PS §180.5.

'therefore this will is null and void.' This plainly states its purpose to be the revocation of some instrument. The opening line of this notation refers to the fact 'The original of this will (4 pages) was destroyed by me of my own free will.' An examination of the document on which this inscription was written and to which it obviously refers shows it to be a copy of the March 26, 1953 will with one irrelevant exception, as hereinbefore noted. It is thus clear that the instrument intended to be revoked is the will of March 26, 1953."

It is clear that all of the essential requirements have been met in this case. The revocation is in writing, it is signed at the end, and it is conceded that the signature is decedent's. His statement "I hereby render this will void" clearly indicates its purpose to be a revocation of the instrument. Likewise, the fact that these words were written on the instrument itself clearly evidences and identifies what was revoked.

However, appellant-widow contends that the following words "and intend to make one revised" which followed the words of revocation, render the purported revocation dependent or conditional and hence ineffectual because a revised will was never executed. For this proposition she relies on the so-called doctrine of dependent relative revocation which this Court applied in *Braun Estate,* 358 Pa. 271, 56 A. 2d 201. In that case a codicil to a will contained the following provision: " 'First: I hereby revoke the Trust Fund in favor of my Daughter Mildred, and substitute a lump sum of dollars in cash.' " This Court held that the attempted revocation was legally ineffectual. The Court said (page 275) :

"Here we have a ease where the *dispositive part** of the revoking instrument fails because of a defect *intrinsic* to the instrument, in that, the bequest which

---

* Italics throughout, ours.

was to be the substitute for what the codicil purported to revoke was permitted to remain incomplete. Accordingly, the doctrine of dependent relative revocation at once became applicable. The circumstances of the case aptly fit the requirements of the rule, a concise statement whereof is to be found in Jarman on Wills (7th Edition, 1930), Vol. 1, at p. 135, as follows: 'Where the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old to depend *upon the efficacy* of the new disposition intended to be substituted, such will be the legal effect of the transaction; and therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force . . .' ".

For reasons which will presently become apparent the doctrine of dependent relative revocation as applied in *Braun Estate,* 358 Pa., supra, has no application to this case.

In *Emernecker's Estate,* 218 Pa. 369, 67 A. 701, the factual situation was closer to the instant case. In that case testatrix destroyed her will declaring her intention as here to make another one. We there held that the unfulfilled intention to execute a new will did not render the revocation ineffective. In so holding we appropriately said (pages 371-372) : "The undisputed facts of this case do not admit of any question as to the legal result, however much we may be impressed that the testatrix's act was induced by an erroneous belief as to the law. She intentionally destroyed the will, and declared she had done so with intent to make another. She knew what she was doing and the effect of it, and she did it animo revocandi, with intent to produce that effect. Her reasons were not matter of inquiry for the court. Whether, if she had felt sure that the will already executed would ac-

complish what she wanted to do she would have changed it, we may speculate but we do not know. As was well said by the learned judge below: 'She was aware that, until this new will was executed, she was without any will at all, and the time of execution was left indefinite. Her friend was to call the "first fine day" to go with her to have it drawn. This was merely the expression of an unwritten intention to do something in the future, and no matter how fully her mind was then made up, there might be a change of intention at any time before it was permanently expressed in writing. And whether the intended provision for her children would be substantial or merely nominal cannot be known. A will giving even a dollar to each child would be a different will from the one destroyed, and the dollar so given could be demanded by the legatees.' "

As in *Emernecker's Estate,* supra, we cannot know or say with any accuracy or certainty—indeed it is the sheerest speculation—whether decedent would change his mind or carry out his intention to make a new will and if so what decedent would or might have provided in a new will. What we believe is clear and certain is that decedent did not wish or intend to dispose of his estate under his will of 1944 which he specifically said he *rendered void.*

The doctrine of dependent relative revocation is not favored in this Commonwealth and has rarely been applied.* The reason is obvious—it usually furnished

---

* The doctrine has been applied in *Worrell's Estate,* 11 Pa. D. & C. 364, where the subsequent instrument was invalid as a will because the attestation clause was ineffective; and in *Lutz's Estate,* 27 W.N.C. 403, where the Orphans' Court of Philadelphia County invalidated a revocation of part of testator's will by a codicil which provided for an illegal disposition of that part of the estate. On the other hand, the doctrine was held inapplicable in *Crooks Estate,* 388 Pa. 125, 130 A. 2d 185; *McClure's Estate,* 309

only speculation or a wild guess as to testator's intention to make his absolute revocation merely conditional.

In *McClure's Estate*, 309 Pa. 370, 165 A. 24, the Court said (page 373) : "The doctrine of dependent relative revocation, an inferred intention of the testator, to be applied under given circumstances, has not as yet been accepted in its arbitrary form in this State. For its satisfactory solution there is nothing to lead the judicial mind with [saying] anything approaching logical certainty to the testatrix's real intent, when the provision of the second will fails either from internal or external causes: Price v. Maxwell, 28 Pa. 23, 39."

It is clear from all of the authorities herein cited that (1) the doctrine as applied by our Courts is primarily a rule of testamentary construction which is used as an aid in ascertaining the intent of the testator, and (2) the doctrine has been applied only where there is (a) either a defective execution of a subsequent will or codicil* or (b) an intrinsic defect in the subsequent will or codicil.** However, where the revoking instrument is in itself valid and operative but the subsequent disposition fails for some extrinsic reason such as the incapacity of the devisee to take, the revocation nevertheless remains effective.*

Appellant makes one other contention which was neither raised in nor considered by the Court below and ordinarily would therefore not be considered by

Pa., supra; *Melville's Estate*, 245 Pa. 318, 91 A. 679; *Teacle's Estate*, 153 Pa. 219, 25 A. 1135; *Mendinhall's Appeal*, 124 Pa. 387, 16 A. 881; *Price v. Maxwell*, 28 Pa. 23, and *Jones v. Murphy*, 8 W. & S. 275, 300. See also: *Appeal of the Lutheran Congregation of Union Church*, 113 Pa. 32, 5 A. 752.

* See: *Melville's Estate*, 245 Pa., supra; *Teacle's Estate*, 153 Pa., supra; *Price v. Maxwell*, 28 Pa., supra; *Jones v. Murphy*, 8 W. & S., supra.

** *Braun Estate*, 358 Pa., supra.

this Court: *Lombardo v. Gasparini Excavating Co.,* 385 Pa. 388, 123 A. 2d 663. This contention simply stated is that the 1950 codicil on which no statement of revocation appears, should be probated as decedent's will. It is hornbook law that a will and a codicil must be construed together as one instrument: *Dwight Estate,* 389 Pa. 520, 134 A. 2d 45; *Crooks Estate,* 388 Pa., supra; *Buzby Estate,* 386 Pa. 1, 123 A. 2d 723; *Boyer Estate,* 372 Pa. 553, 94 A. 2d 721. The 1950 codicil of itself made no disposition of decedent's estate; it republished and is inextricably interwoven with decedent's 1944 will and it is incapable of operating by itself as decedent's will. Furthermore, in the instant case the codicil was attached to and made a part of and was kept with the will. Under the above-mentioned facts the will and codicil were, we repeat, so connected and interwoven that the testator's intent to revoke all the gifts in his last will, namely the 1944 will, is clear.

The questions here involved readily could and should have been raised by an appeal from the probate of Holt's will of 1944 and the codicil of 1950, instead of by declaratory judgment proceedings. There are no exceptional circumstances to justify such proceedings. Declaratory judgment proceedings in cases such as this, disrupt appropriate well settled procedures and are likely to increase litigation which is already swamping our Courts; and "A declaratory judgment should not be granted where a more appropriate remedy is available. See Stofflet & Tillotson v. Chester Housing Authority, 346 Pa. 574, 31 A. 2d 274 (1943); Borchard, Declaratory Judgments, 302 (2nd ed. 1941)": *Wirkman v. Wirkman,* 392 Pa. 63, 66, 139 A. 2d 658. See to the same effect *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 592, 92 A. 2d 551; *Capital Bank & Trust Company's Petition,* 336 Pa. 108, 6 A. 2d 790; *Lifter Estate,* 377 Pa. 227, 103 A. 2d 670.

Decree affirmed, costs to be paid by appellant.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

I concur with the majority opinion in all respects save one. The majority opinion, relying on *Wirkman v. Wirkman,* 392 Pa. 63, 66, 139 A. 2d 658, states that a declaratory judgment should not be granted where a more appropriate remedy is available. Such a statement is contrary to both the provisions of the Act of May 26, 1943, P. L. 645, §1, 12 PS §836 and our decisional law since the passage of the 1943 statute: *Johnson Estate,* 403 Pa. 476, 486, 171 A. 2d 518; *Burke v. Pittsburgh Limestone Corp.,* 375 Pa. 390, 391, 100 A. 2d 595; *Philadelphia Manufacturers Mutual Fire Insurance Company v. Rose,* 364 Pa. 15, 70 A. 2d 316.

The decisional point in *Wirkman,* supra, was that the parties, having contractually bound themselves to pursue arbitration to the exclusion of prior judicial relief, were concluded from seeking declaratory judgment. The statement quoted by the majority from *Wirkman* was dicta and, in my opinion, founded on authority nullified by the passage of the 1943 Act.

Unless the Bench and Bar are to be confused it should be made clear that declaratory judgment *may* lie even though there be another available remedy. Such was the legislative mandate embodied in the 1943 Act and such mandate we must follow.