## McClure's Estate. No. 2.

The facts appear from the following extracts from the adjudication of

VAN DUSEN, J., Auditing Judge.—Testatrix died May 11, 1930, having made two testamentary papers, both of which were probated. By the first paper, which was attested by two witnesses, she provided $325 for her funeral; gave $250 for care of a burial lot; gave six $1000 coupon bonds of the Baltimore & Ohio Railroad Company to the League of Women Voters; and gave the residue to her niece, Louise Hertzler, who was appointed executrix. When this paper was found and probated the name of the niece was "obliterated" from the paper, thus revoking the legacy to her and her executorship: Wills Act, section 20 (a). By the second paper, which was not subscribed by any witness, testatrix provided $319 for funeral expenses, and gave $250 for care of the same burial lot. She then directed: "Everything else belonging to me to be sold & the money obtained added to any money I leave, & the amount which should exceed $11,000.00 given to the protestant Home for children under ten years of age." This institution cannot be identified, and the legacy to it fails also because of the lack of subscribing witnesses. The residue, therefore, goes to the next of kin. . . .

It was agreed on behalf of all parties who were represented that the legacy in the first writing related to six $1000 bonds of the Philadelphia & Baltimore Central Railroad Company, and that the legatee is the Pennsylvania League of Women Voters, and I also so find from the testimony. The question is whether this legacy is revoked by the second writing, which attempts to dispose of *all* of the testatrix's estate, but fails to do so effectively.

It is important to note that the second writing contains no express clause of revocation, therein differing from Price *v.* Maxwell, 28 Pa. 23, Melville's Estate, 245 Pa. 318, and Worrell's Estate, 11 D. & C. 364. The first writing is revoked only so far as the dispositions in the second writing are inconsistent with it; and it is my opinion that these dispositions must be effective in order to amount to such revocation. In Page on Wills, § 453, it is said:

"If the later will or codicil does not contain an express revocation clause, operates as a revocation, but only because it is inconsistent with the prior instrument, the failure of the gift in the later instrument prevents such gift from operating as a revocation, except where testator's intention to revoke the prior gift is clear from the entire instrument,"
citing Marx's Estate, 174 Cal. 762, where it is said:

"The authorities support the proposition that an invalid disposition in a subsequent will does not operate to revoke a disposition in a prior will, and is ineffective for any purpose."

This case is exactly in point on the facts.

The legacy in question will, therefore, be awarded to the Pennsylvania League of Women Voters.

*Foulkrod, Sheppard, Porter & Alexander* and *Philip Price*, for exceptants.
*Benjamin H. Ludlow,* contra.

HENDERSON, J., February 5, 1932.—Two testamentary papers were left by the testatrix. By the first one, duly attested by two subscribing witnesses, she gave $325 for her funeral expenses, $250 for the upkeep of her burial lot, six $1000 bonds of the Baltimore & Ohio Railroad Company to the League of Women Voters, and the residue to her niece, Louise Hertzler. When this paper was found, the name of the niece was "obliterated," thus revoking her legacy: Wills Act, section 20 (a).

By the second paper, which she entitled "My Will," to which there were no subscribing witnesses, and which contained no clause of revocation, she gave $319 for her funeral expenses, $250 for the care of the same burial lot and the whole balance of her estate to the Protestant Home for Children. The contents of this second paper clearly indicate the intention of the testatrix to supersede the first writing and to revoke it.

The League of Women Voters claimed that as the gift to charity, in remainder, in the second paper was inoperative because unwitnessed, the second writing did not dispose of the whole estate, and, hence, it was a mere codicil to the first writing which gave the six $1000 bonds to the League of Women Voters.

The vice of this contention lies in the fact that the second writing unmistakably evinced an intention to dispose of the whole estate and thereby revoked the first writing. It will not do to say that as the residuary gift to charity failed for want of witnesses the will should be read as if that clause were omitted, and, hence, the implied intention to revoke the earlier writing would not arise.

We may not thus disregard the void gift to charity, because it is recognized by section six of the Wills Act, which provides that "all dispositions of property contrary hereto [i. e., gifts to charity in an unattested will] shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law."

The intention thus being established to revoke the first writing in its entirety, and the charitable gift in the second writing being void, the residuary estate will be awarded to the four next of kin in accordance with section six of the Wills Act, which is as follows:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible, and, at the time, disinterested witnesses, at least thirty days before the decease of the testator; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. . . ."

See Anderson's Estate, 243 Pa. 34.

In support of the principles and statutory enactments decisive of the present case, we will cite several cases dealing with this question:

Teacle's Estate, 153 Pa. 219, 223:

"Such a will [i. e., which makes a complete disposition of all the property] is clearly incompatible with any former will, and, therefore, must operate as a revocation without express words to that effect. Nor does it matter that some of the bequests in the second will fail under the act of 1855, by reason of the death of the testatrix within thirty days from the date of the will. The bequests fail, not from the infirmity of the instrument, but from the incapacity of the legatees to take."

Price v. Maxwell, 28 Pa. 23, 39:

"Where the second devise fails by reason of a defective execution of the second will, it is no revocation of the first . . . but where it fails from want of capacity in the devisee to take, the prior devise is revoked. . . ."

Hoffner's Estate, 161 Pa. 331; Melville's Estate, 245 Pa. 318, 324; Gensimore's Estate, 246 Pa. 216.

As is pointed out in Hoffner's Estate, *supra*, at p. 341:

"The first will and codicil were, therefore, fatally inconsistent with the last one. But, independent of any rule of construction, the act of 1855 does not permit us to seek for a legatee under some former will made more than a calendar month before death. If the bequest here is invalid, it is because the statute so declares, and for no other reason; if for that reason, then the same statute declares where it shall go, 'to the residuary legatee or devisee.' "

Because the second will disposed of the entire estate, it revoked the former will. The incapacity of the charitable bequest of residue under the second will was occasioned by the provisions of section six of the Wills Act of 1917, but, by the same section, in such event, the void bequest passes to the "heirs or next of kin."

The exceptions are sustained, the adjudication modified in accordance with this opinion, and as modified is confirmed absolutely.

LAMORELLE, P. J., and GEST, J., were absent.