## Madeira's Estate

Before Gest, Henderson, Van Dusen and Sinkler, JJ.

*George B. Hawkes,* for exceptant; *H. Horace Dawson,* contra.

SINKLER, J., March 10, 1933.—The auditing judge, correctly construing the principles of law applicable to the case before us, has rendered a just decision, sound in law.

The exceptant's paper book before the court in banc concludes with the argument that McClure's Estate, 309 Pa. 370, cited but not followed, it is argued, by the auditing judge, applies with great and decisive force in the present case and disposes of every contention against the exceptions. The adjudication points out that while the paper writing dated September 10, 1931, executed by our testatrix would, standing alone, dispose of her entire estate, it is entitled "codicil" and must be united so far as possible with the will of December 10, 1918. In this respect, the adjudication continues, the present case differs from McClure's Estate, 309 Pa. 370.

In other respects the two cases are quite different.

The first McClure will was formally drawn and properly attested. Following provisions for funeral expenses and the perpetual care of her cemetery lot, testatrix specifically bequeathed six designated $1000 bonds to the League of Women Voters, and gave the residuary estate to her niece, who was made executrix. Later the niece's name was erased, effecting a revocation both of her legacy and of her appointment as executrix. A little more than two months after the date of this will testatrix wrote in her own handwriting an informal paper headed "my will." After making provisions for her funeral expenses and endowment of her burial lot, she directed: "Everything else belonging to me to be sold and the money obtained added to any money I leave and the amount which should exceed $11,000.00 given to the Protestant Home for Children under ten years of age." Thus the disposition of the residuary estate made by the later will was entirely different from that made by the earlier will. This paper was duly signed by testatrix, but was not attested by two subscribing witnesses, as is required by section six of the Wills Act of June 7, 1917, P. L. 403. Therefore, the gift of the residue to the home failed. It was held by this court that the second will effected a complete revocation of the first will, and from our decision the League of Women Voters took an appeal to the Supreme Court. In dismissing the appeal, the Supreme Court finds that the later will disposes of testatrix' entire estate, is inconsistent with the earlier one, and that the provisions of the two wills cannot be harmonized. "They are two separate and distinct papers, both complete in themselves, without any relation to each other, with no inherent characteristics to compel a connection."

The will now before us dated December 10, 1918, is typed, phrased in legal terms, duly executed and, being attested by two subscribing witnesses, is effective to dispose of testatrix' estate for charitable and religious purposes. After directing that her entire estate be converted into cash, the payment of her debts and funeral expenses, the erection of a headstone over her grave and the endowment of her burial lot, testatrix gives $5000 to the Northwestern General Hospital for the perpetual endowment of a free bed to be known as "The Mary Jane Madeira Bed" in memory of her mother. The residue is given to the Church of the Incarnation to be applied to such purposes as the rector and board of church wardens may direct.

The paper dated September 10, 1931, designated "codicil" begins, "$5000 to endow bed in Episcopal Hospital (not in Northwestern General). If I die within 30 days let it remain to latter Hospital Bed in memory of father & mother, sisters & brother to be known as the Mary J. Madeira bed." There follow eighteen specific bequests of clothing, jewelry and household effects, a statement as to the place of keeping of two building and loan association books, and the following residuary clause: "Residue of my estate to Church of Incarnation endowment Fund. If church is disbanded,—Give residue to Seamen's Church Institute." The concluding sentences relate to the funeral services and arrangement of decedent's hair. It is all written by testatrix in her own hand, is signed by her at the end thereof, but is not attested by subscribing witnesses.

The two McClure wills are quite dissimiliar from the Madeira will and codicil. The latter are linked not only by the use of the word "codicil," but also by substituting in the first clause of the codicil the endowment of a bed in the Episcopal Hospital, "not in Northwestern General," and the further provision that in the event of her death within thirty days "let it remain to latter Hospital." A part of her personal estate is specifically bequeathed, the residuary clause is changed only by an alternative provision to be effective if the church is disbanded. Thus the general plan outlined in the will is preserved in the codicil, although modified in some respects. The recipient of the endowment of a free bed to be known by the name of testatrix's mother is changed by the codicil, but testatrix did not intend the bequest to fail if the substitutionary bequest were invalid. Testatrix evidently knew of the statutory provision that a bequest for a charitable purpose is invalid if the testator die within thirty days from the time of the execution of the will, but was not aware of the requirement that a will containing such a bequest must be attested by two subscribing witnesses. The will and codicil are in harmony, and when construed together clearly disclose testatrix' purpose in relation to the endowment of a free bed to be known by her mother's name, as well as in all other respects. The later will in the McClure case, on the contrary, cannot be reconciled with the earlier one, and, as the Supreme Court has held, contains evidence of a complete intention to revoke it. The auditing judge in the present case has not, as the exceptant argues, failed to follow the decision in McClure's Estate, but has rightly recognized the distinction between McClure's Estate and the case before him.

The auditing judge holds that testatrix regarded the legacy to Northwestern General Hospital as standing unless effectively displaced, citing Melville's Estate, 245 Pa. 318; also Jarman on Wills, 154, as follows: "where the second devise fails by reason of a defective execution of the second will, it is no revocation of the first."

The general rule on the subject is stated more fully in 1 Jarman on Wills 344, cited with approval by the Supreme Court of this state in Mellville's Estate, supra, as follows:

"If, on the other hand, the new devise be ineffectual, on account of the attestation being insufficient for a devising, though sufficient for a revoking will the revoking clause becomes inoperative on the principle before noticed that the revocation is conditional and dependent on the efficacy of the admitted [attempted] new disposition, and that failing, the revocation also fails; the purpose to revoke being considered to be, not a distinct independent intention, but subservient to the purpose of making the new disposition of the property; the testator meaning to do the one so far only as he succeeds in effecting the same. But it seems, that, if the second devise fails, not from the infirmity of the instrument, but from the incapacity of the devisee, the prior devise is revoked."

The auditing judge properly disallowed exceptant's claim that the bequest in the will to Northwestern General Hospital is revoked by the codicil and that it falls into the residue by reason of the substitutionary bequest to Episcopal Hospital failing through lack of subscribing witnesses to the codicil as required by the statute.

The exceptions are dismissed and the adjudication is confirmed absolutely.