## Baily Estate

226

*Alphonso Santangelo* and *Mortimer W. H. Cox*, for exceptants.

*Wells, Campbell, Reynier & Yohn, William A. O'Donnell, Jr.* and *Jenkins and Acton*, contra.

*Prince and Prince*, for accountant.

TAXIS, P. J., May 26, 1964.—Mifflin W. Baily died on January 2, 1921, survived by a widow, Annie E. Baily, and four daughters, Evelyn W., Elsa J., Mary E. and Lillian B. Baily. His will and its three codicils are of record, and the current dispute principally concerns the validity of certain charitable dispositions made therein.

The will, which was handwritten and dated August 3, 1915, creates life estates for testator's wife and daughters. At the death of the last of the daughters, the principal of testator's estate was devised, with certain conditions, to three charities. One-half was given to the First Baptist Church of Pottstown, three-tenths to the Pottstown Hospital, and two-tenths to the Trustees of the Bringhurst Fund of Pottstown. The will bears the signature of two subscribing witnesses.

The first codicil is dated February 12, 1919. It continues the life estates for decedent's survivors, and then ". . . for the purpose of supplying houses" . . . "to be rented to working people . . .", testator devised certain dwellings and land which he owned to trustees whom he termed "Housing and relief trustees of Potts-

town." He directed that ". . . all expenses necessary to the settlement of the estate shall be paid . . ." from income to be accumulated after the death of the last member of his family. Having made these changes, he then disposed of the balance of his estate four-tenths to the American Baptist Foreign Missionary Society, three-tenths to the American Baptist Missionary Society, two-tenths to the Pottstown Hospital, and one-tenth to the Homeopathic Hospital of Pottstown.

The second codicil, dated December 15, 1919, merely changed the source of the funds necessary to the settling of testator's estate, by providing that they and inheritance taxes should be apportioned among the beneficiaries according to ". . . the amount that each shall receive . . ."

The third codicil, dated March 25, 1920, first limited the life estate of the last surviving daughter to three-fourths of the net income, rather than all of it as was originally given her. The stated purpose of this change was ". . . to increase the amount available by the 'Bringhurst Trustees' . . ." and then testator directed that ". . . at the time of final settlement the entire remaining balance and *residue* of the estate shall be awarded to the 'Housing and Relief Trustees of Pottstown, Pa.' " None of the three codicils was witnessed in any way.

Annie E. Baily died in 1929, and testator's four daughters died respectively in 1945, 1955, 1956, and 1958, all single and without issue. The present account was filed as a result of the death of the last of the life tenants, and the present controversy stems from objections filed thereto. The objectors are the intestate heirs of the testator, Mifflin W. Baily, or their personal representatives. Amended objections, some comprehensive in detail but in substance akin to the originals, were filed on December 27, 1963.

On February 17, 1964, on the motion of counsel for

the trustee, the court granted a rule upon objectors to show cause why their objections and amended objections should not be dismissed and/or stricken. The objectors filed an answer to the motion, conceding that any interest of theirs in this estate is based upon the existence of an intestacy, but then setting forth the details of their position that such an intestacy does, in fact and in law, exist.

Numbers 1 and 15 of the amended objections relate to the aforementioned principal issue in this case, namely, whether and to what extent the various charitable gifts contained in testator's will and codicils are effective. Objections 2 through 14 inclusive, and objections 16 and 17, relate to sundry items in the account, both as to amount and to the correctness of the charges; it has been agreed by counsel, however, that the objectors' right to raise the latter depends upon whether they have any interest in this estate in the first place. Hence, a determination of the validity of decedent's charitable gifts is the first step in the solution of the problem here presented.

The will and three codicils under consideration encompass some 13 handwritten foolscap pages, and are obviously the culmination of considerable thought on the part of Mr. Baily. In all of this writing, only one possible ambiguity has been pointed out. Objectors contend that the language in the third codicil stating that ". . . the entire remaining balance and *residue* of the estate shall be awarded to the 'Housing and Relief Trustees . . .' " amounts to an expressed revocation of all of the prior detailed dispositions of testator's residuary estate.

I cannot so interpret these words. First, testator would be destroying 13 detailed pages and 5 years of thought with one phrase, which need not necessarily have the meaning argued for. Second, this codicil, by its own words, is dealing solely with "net income" and

its conservation, by which procedure testator wished to "increase the amount available" to his own particular and local form of Bringhurst Trustees. Third, testator not only prepared his own testamentary writings, but he very carefully preserved them, and indicated on them where the respective codicils fit into the original will; if the third codicil were construed as the objectors contend, there would have been no need to preserve any portion of the original will or first codicil, excepting those small sections providing for the life estates. Fourth, a codicil does not have an existence independent of the original will: Moore Estate, 347 Pa. 276; as between two interpretations of a codicil, one consistent with the original will and the other destructive thereto, the former should always be adopted. It is therefore my conclusion that, in the third codicil, testator merely intended to transfer one-fourth of the net income of his estate from his last surviving daughter to his trustees, for the period from the death of his third daughter to the time of final distribution, and made no other changes in his testamentary plan.

We come now to the principal problem, which arises from the provisions of section 6 of the Wills Act of June 7, 1917, P. L. 403, 20 PS Ch. 2, App., §195. The language of this act on the date of testator's death was as follows:

"No estate . . . shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible, and, at the time, disinterested witnesses, . . . and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. . . ."

This provision was the reenactment of a statute dating back to 1885, and remained the law of this Commonwealth until the Act of July 2, 1935, P. L. 573,

sec. 1, which totally struck out the witness requirement.

This act effectively bars the charitable dispositions contained in codicils one and three. They obviously lack the necessary witnesses. The will, however, does not suffer from this defect. Nevertheless, objectors contend that the codicils effectively revoke the residuary gifts in the will, because the failure to have witnesses does not impair their general testamentary effect, but only prevents them from being vehicles for religious or charitable bequests. In other words, the codicils are allegedly valid for all purposes except their charitable dispositions, including the revocation of prior inconsistent bequests, with the result that an intestacy has occurred as to the residue of the estate.

Undoubtedly, to the extent that a codicil or a subsequent will is inconsistent with the provisions of a prior will, it effects a revocation, whether or not a formal declaration of such is made: Anderson's Estate, 243 Pa. 34. This rule derives from the basic concept that a testator's last will is his effective will. Although the third codicil has been found above not to be inconsistent with any of the charitable gifts either in the will or in the first codicil, there is no doubt that the first codicil purports to, and if literally enforced would, dispose of testator's entire residuary estate in a different fashion than does his will.

Further, Melville's Estate, 245 Pa. 318, is authority for the rule that a codicil intended as a substitute for a provision in the will may operate as a revocation, even though its dispositive provisions cannot be carried out. It is clear, therefore, that the argument advanced on behalf of some of the named charities, namely, that the lack of attestation voids the codicils totally, must be rejected. Conversely, however, all revocations are not absolute. The charitable beneficiaries strenuously urge here that this case is one in which the doctrine of "dependent relative revocation" should

be applied. That doctrine, which might better be termed one of "conditional revocation," has been stated in many ways, none of which is completely satisfactory. In general, however, it holds that a revocation, either expressed or by necessary implication, will not be given effect when it may reasonably be inferred that it was made only to allow a later testamentary disposition which fails. A consideration of some of the cases wherein this rule has been considered will, perhaps, delineate its real significance clearly.

In McClure's Estate, 309 Pa. 370, there were two wills. The first disposed of only part of testatrix's estate. The second, however, disposed of all of it, but contained an invalid charitable disposition. The second did not contain any express clause of revocation, and a beneficiary under the first will contended that the doctrine of dependent relative revocation was effective to sustain its bequest. The Supreme Court said, however, at page 375:

"The later will . . . disposes of the entire estate and is inconsistent with the earlier will. The provisions of the two wills cannot be harmonized. There is no reference in the later will to the first will, nothing inherent in the second will connects it with, or in any way refers to, or leads the mind to, the earlier will."

As to a supposed testamentary intent to make the revocation conditional, the court said, page 374:

". . . There is nothing in the second will to indicate such intent. The two dispositions in question do not lie in the same category. The legacy to the appellant was a specific gift of $6,000 in bonds. The residue was given to the niece. No such gift appears in the second will. The entire residue was given to the Home for Protestant Children . . ."

An earlier case with a similar result is Melville's Estate, supra. In that case, however, there were a will and a codicil, and the codicil concludes with the follow-

ing: "In order to carry out the provisions of this codicil, clause No. 29 of my Will dated July 5, 1910, is hereby abrogated." This had been preceded by certain invalid charitable gifts replacing legacies to individuals in the said clause no. 29. The Supreme Court held that there was an absolute revocation by the use of the quoted language for two reasons. First, at page 322, it found that,

"The language of the codicil makes it clear to our mind that the new disposition made thereby was the result of a predetermination to revoke the old. We find nothing to indicate that testator in any event intended that appellants were to share to any considerable extent in his estate."

The second reason, citing numerous old cases, was that the doctrine of dependent relative revocation was not applicable where the later will or codicil fails because of extrinsic circumstances, rather than from a defect in itself, and the 30 day rule as then applicable was held to be an extrinsic circumstance.

The Supreme Court also held the doctrine inapplicable in Holt Estate, 405 Pa. 244. In that case testator wrote on his will, "I hereby render this will void and intend to make one revised." No other will was ever made. The court refused to apply the doctrine of dependent relative revocation and thus validate the original will, because of the complete lack of knowledge as to testator's intent when he wrote as he did. The court said, at page 250,

". . . we cannot know or say with any accuracy or certainty—indeed it is the sheerest speculation—whether decedent would change his mind or carry out his intention to make a new will and if so what decedent would or might have provided in a new will. What we believe is clear and certain is that decedent did not wish or intend to dispose of his estate under his will of 1944 which he specifically said he *rendered void*."

On the other hand, Braun Estate, 358 Pa. 271, 273, saw the application of the doctrine in a situation analogous to the one at hand. In that case, Braun established a $50,000 trust fund for his daughter in his will, but in a codicil attempted to change this by the following: "First: I hereby revoke the Trust Fund in favor of my Daughter Mildred, and substitute a lump sum of dollars in cash." The Supreme Court commented on this situation, pp. 273-274, thus, in holding that the doctrine should be applied:

"The doctrine of dependent relative revocation is a rule of testamentary construction whose use, as in the case of all such rules, is limited to aiding in the ascertainment of a testator's true intent . . . (citing Melville's Estate, supra) . . . the authorities 'all recognize a clear distinction between failure of the dispositive part of the revoking instrument because of a defect in the instrument, and failure because of extrinsic circumstances; and there is entire concurrence of view that in the former case (such as here) the revocation is inoperative, while in the latter (gift to charity void because of immaturity) it must prevail.' The primary question, therefore, in any instance is as to the character of revocation.

"Here we have a case where the dispositive part of the revoking instrument fails because of a defect intrinsic to the instrument, in that, the bequest which was to be the substitute for what the codicil purported to revoke was permitted to remain incomplete. Accordingly, the doctrine of dependent relative revocation at once became applicable."

On page 275, the court cites with approval from Jarman On Wills, 7th ed., 1930, vol. 1, at page 135. That language reads:

"Where the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old

to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and therefore, if the will intended to be substituted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force . . ."

This latter quotation generally represents the law as it now stands, although it is perhaps a little too broadly stated. The authorities discussed above confine the rule, in Pennsylvania, to those cases where the apparent purpose of the revocation of an initial disposition is to make way for a subsequent one of a similar kind or type, and the subsequent one fails from a defect in the instrument creating it.

The decision in Stevenson's Estate, 48 D. & C. 140, is worthy of note as it illustrates a broader application of the rule than our appellate court cases have so far passed upon. In that case, a remainder interest created by codicil violated the rule against perpetuities and was thus invalid. Although such failure was, obviously, from an extrinsic rather than an intrinsic cause, and even though Stevenson's Estate preceded Braun's Estate in time by five years, Judge Klein of the Philadelphia Orphans' Court concluded that testator's intent was that his codicil should not affect the original will any more than was absolutely necessary, and quoted from Mifflin's Estate, 49 Pa. Superior Ct. 605, 608, as follows:

". . . A new will revokes a former will, but a codicil ratifies the preceding will except as to the changes expressly indicated. A revocation is not to be presumed in the case of a codicil . . . . [p. 610] A codicil should be so construed as to give effect to all the provisions of the will if that can possibly be done."

See also Rice's Estate, 16 D. & C. 123, in the Orphans' Court of Montgomery County.

Here, analysis of the testamentary documents show that they come within the rules of the Braun and Stevenson cases. By the codicils, testator did not indicate any intention to extinguish his initial testamentary scheme. On the contrary, they show most strongly further thought and refinement of his original plan. The benefits which he originally conferred upon local charities were changed in form and somewhat in amount, but this represents the same sort of technical rather than substantial change which occurred in Braun Estate. Testator's alteration of his original bequest for low cost housing to a gift to his own trustees for the same purpose is, likewise, merely refinement of his original concept. And certainly, the failure of the charitable provisions of the codicils is due to an intrinsic defect, the lack of witnesses to the execution of the document itself, a "defect of attestation" as set forth by Jarman, supra.

Section 15(c) of the Wills Act of 1917, 20 PS Ch. 2, App., §253, provides that upon the failure of a testamentary gift such as here occurred, the estate represented thereby ". . . shall be included in the residuary devise or bequest, if any, contained in such will." It appears that the purpose of this language was to lay at rest any contention that the property represented by such a gift should pass by intestacy rather than by the residuary clause. Under the view here taken of this case, however, there remains a complete and valid will disposing of testator's entire estate, and it is not necessary to consider this act in detail. In addition, the act does not apply if ". . . a contrary intention shall appear by the will, . . ." and thus by its own terms does not control the present situation.

In summary, I hold that the charitable gift contained in the first and third codicils to testator's will are invalid due to lack of attestation; that, however, the said codicils do not revoke any provision of the original will

236

except as it may be inconsistent with the effective provisions of the codicils; and that the charitable and all other dispositions contained in the original will are therefore valid and enforceable. Accordingly, all objections and amended objections are dismissed, and trustee's rule to show cause why the same should not be stricken is made absolute.

## Opinion Sur Exceptions

TAXIS, P. J., November 24, 1964.—Seven exceptions to the adjudication in this estate have been filed by Catherine Bagge, on behalf of the intestate heirs of the above decedent. All of these, except no. 3, object to the conclusion of this court that the last will and testament of Mifflin W. Baily is a valid testamentary document, although the codicils thereto are invalid.

Testator left a will and three codicils. Each contained charitable gifts, but only the will was witnessed, as required by section 6 of the Wills Act of 1917 in order to make such gifts valid. The balance of the relevant facts are set forth in the adjudication and in an earlier opinion of this court dated May 26, 1964.

Exceptant argues vigorously that the language of the third codicil, on its face, disposes of testator's entire estate in a way inconsistent with, and therefore revocatory of, his prior will and codicils. This issue was considered before in detail, and nothing new has been raised to put it in a different light. It suffices to note these fundamental rules: First, a codicil should be construed, if reasonably possible, to be in harmony with the will it amends. Second, all parts of a will should be given significance, and a construction is not favored which nullifies or voids substantial and well-drawn portions of a will. Third, the will and codicils must be read as a whole to fairly ascertain testator's fundamental intent, and discrepancies in detail are submerged in order to carry out such intent. Cf. Byrne's Estate, 320 Pa. 513, for an illuminating discus-

sion of the latter problem. Applying these rules, it is clear that the third codicil deals entirely with an intended change in the distribution of net income, for a limited period of time, and any other conclusion would do violence to all three of the aforementioned principles.

Exceptant's second complaint is to the application of the doctrine of dependent relative revocation to this case. Her arguments in this area have been previously thoroughly discussed, but it may be well to summarize the reasoning which causes the application of that doctrine to be appropriate here.

As set forth by Braun Estate, 358 Pa. 271, 273, the doctrine of conditional or dependent relative revocation is utilized in Pennsylvania only as a means of ". . . aiding in the ascertainment of a testator's true intent." At first blush, this appears inconsistent, for the application of the doctrine, wherever it occurs, stems from a failure or inability to carry out at least one expression of testator's intent .This is so here. However, testamentary intent to which the rule relates is that involved in the revocation of a prior testamentary document, not that which is expressed by the making of the subsequent one. Thus, where it is reasonable to conclude that a revocation made by a subsequent writing did not constitute an end to the basic testamentary scheme, but was made *only* as a necessary prerequisite to an amendment of it, such revocation will be regarded not as absolute but only conditional, and dependent upon the validity of the subsequent dispositions. Understood in this light the rule, in spite of its name, becomes much more clear in its application. No reason appears, therefore, to change the original conclusion of this court that testator's will is a valid and enforceable disposition of his entire estate.

Exception no. 3 of Catherine Bagge states that the court ". . . erred in finding that distributions already

made by the accountant were proper." In addition, two exceptions filed by the Bringhurst Trust of Pottstown, The First Baptist Church of Pottstown, and The Pottstown Hospital, go to the same problem, and point out that certain advance distributions set forth on page 5 of the account, totalling $48,000, were improper and should be disallowed. The position of all of the exceptants is well taken, but, in point of fact, nowhere in the adjudication were such distributions approved; on the contrary, decedent's entire estate was awarded according to the language contained in the original will. The court has been informed by Joseph L. Prince, Esq., counsel for the accountant, that such distributions were made conditionally, and will be repaid. The resolution of this problem should clearly appear on the schedule of distribution.

Accordingly, all of the exceptions to the adjudication filed by Catherine Bagge, The Bringhurst Trust of Pottstown, The First Baptist Church of Pottstown, and The Pottstown Hospital, are dismissed.